(November 30, 1967)

GLICK & DOLLECK, INC., Respondent, v. TRI-PAC EXPORT CORP., Appellant.

*Per Curiam.* Plaintiff brought an action to recover the sum of $21,008.92 (subsequently reduced to $20,642.92) representing the balance due from defendant for certain goods known as " Salty. Dog " scrubdenims. The answer, in addition to denials, claimed a breach of warranty. The goods in question were sold between April 18, 1966 and May 11, 1966. This action was commenced October 3, 1966, and issue joined October 26, 1966. Thereafter plaintiff moved for summary judgment pursuant to CPLR 3212.

As indicated in the dissenting opinion the merchandise was not shipped to defendant but directly to its customers. Plaintiff's supporting affidavit asserts that at the time this action was commenced the total value of goods on hand with plaintiff, awaiting orders from defendant, was $3,129.33.

According to plaintiff's supporting affidavit the order of April 18, 1966, which was delivered to defendant amounted to $13,234.20, and that of May 11, 1966, amounted to $8,014.12. On the bottom of each invoice appeared the words "All risks on these goods whether held or shipped are assumed by purchaser. All claims must be made within 5 days after receipt of goods." Copies of the invoices are attached. By letter dated June 28, 1966, defendant asked for, and later received, a statement of its account as of September 30, 1966. No complaint was made at that time as to the nature or the quality of the goods. This lends credence to plaintiff's assertion that the market for these goods later fell suddenly and the prices dropped. An additional supporting affidavit in behalf of plaintiff refers to a conference between the parties in early October, 1966, with respect to plaintiff's claim and asserts that at no time was there any complaint with respect to the quality of the goods. The affidavit of a textile expert, sworn to November 3, 1966, deposes that on October 28 and October 31, 1966 he examined certain merchandise returned by customers of defendant on the ground that such goods were a mixture of scrubdenim and ordinary denim. He swore that the merchandise "is scrubdenim in toto."

Plaintiff, in a further affidavit, alleged the goods in question were selected by a Mr. Blum and a Mr. Watson, employees of defendant, and Blum examined the goods "and was satisfied as to their quality and merchantability". No complaint was ever made as to the goods until after service of the summons. The affidavit, sworn to November 29, 1966, notes that no affidavits were submitted by defendant from any of defendant's customers. In response defendant's attorney submitted an affidavit to which was attached a copy of a letter, allegedly from a customer of defendant, dated November 28, 1966, complaining of certain seconds of scrubdenim. No affidavit of Blum or Watson is submitted with respect to their alleged examination of and satisfaction with the goods, nor is it claimed they are not available.

On the whole record defendant fails to raise any genuine triable issue of fact and the order and judgment appealed from should be affirmed, with costs to respondent.

STEUER, J. (dissenting). The affidavits submitted by defendant present triable issues. The action is for the sale price of several sales of brushed denim cloth. Payment for certain shipments was refused on the ground that the cloth delivered was defective in that the brushing process was so unevenly done that parts of the rolls were brushed and others not, with the result that the material could not be cut into garments. Concededly, the merchandise was never delivered to defendants but, according to agreement, was shipped directly to defendant's customers. Certain of them returned the goods and they were in turn returned to plaintiff. Clearly an issue is raised as to whether the goods were merchantable. Plaintiff seeks to obviate this issue by proof of two facts: first that the orders contained a provision that all claims must be made in five days; and by conduct of the defendant indicating that its claim is an afterthought caused by a fall in the price of the goods. Defendant counters these contentions by sworn statement that the provision in the order is understood in the trade to refer only to quantities delivered, not quality, and this is supported when it is understood that defects in quality are usually only ascertained when the goods are ready to be cut. The inconsistent conduct is an examination of the goods by defendant at which time an offer

of some payment was made. The inspection was had after the goods had been returned. The offer was to pay for the goods which had not been returned, that is, accepted by defendant's customers. And this offer was never increased. This conduct is consistent with defendant's stand. On these facts a clear issue is raised.

Stevens, J. P., Capozzoli, McNally and McGivern, JJ., concur in *Per Curiam* opinion; Steuer, J., dissents in opinion.

Order and judgment affirmed, with $50 costs to the respondent.